**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLIS NANTON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>OFFICER LOUIS MECKA, et al.,<br><br>　　　　Defendants. | Civil Action No. 2:11-cv-6132 (JAD)<br><br>**OPINION** |

JOSEPH A. DICKSON, U.S.M.J.

　　　　This matter comes before the Court upon motion by defendants the Jersey City Police Department ("Jersey City") and police officer Louis Mecka ("Officer Mecka") (together, "Defendants") for summary judgment pursuant to Fed. R. Civ. 56. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, Defendants' motion for summary judgment is **granted in part and denied in part.**

　　　　I.　　**BACKGROUND.**

　　　　This is a civil rights action brought by plaintiff Ellis Nanton ("Plaintiff") against Defendants, alleging that Defendants violated Plaintiff's constitutional rights when they wrongfully arrested, detained and prosecuted him for the charge of eluding notwithstanding Plaintiff's presentation of evidence which he alleged established that he was out-of-state at the time of the incident.

1

A.     The Alleged Eluding Incident.

On March 6, 2009, at approximately 10:30 p.m., Officer Mecka and his canine partner Froto ("Froto") were responding to a report of a prowler at the location of 137 Wilkinson Avenue, Jersey City, New Jersey. (Br. Supp. Mot. Summ. J. 1, ECF No. 16-1). As Officer Mecka was leaving the call and attempting to place Froto in the patrol unit, he observed a red Chevy Venture minivan travelling down Wilkinson Avenue at a high rate of speed. (Defs.' Statement of Undisputed Material Facts ¶ 7, ECF No. 16-2). Officer Mecka claimed the vehicle "almost struck him" (Br. Supp. Mot. Summ. J. 1, ECF No. 16-1), but that he was able to place Froto in the patrol unit and get out of the way. (Defs.' Statement of Undisputed Material Facts ¶ 7, ECF No. 16-2). According to Officer Mecka, the minivan slowed down as it approached him due to the width of the street and the presence of other patrol cars. (Id. at ¶ 10). Officer Mecka was able to view the driver of the minivan through the vehicle's open window. (Id. at ¶ 11). Officer Mecka recognized the driver of the vehicle and his distinct dreadlocks, and observed that the driver was wearing a "letterman's jacket." (Id at ¶¶ 12, 13). Officer Mecka believed the driver to be Plaintiff, whom he had interacted with on a previous occasion.[1] (Id. at ¶ 14).

Officer Mecka attempted to conduct a traffic stop on the minivan. (Id. at ¶ 21). During the pursuit, Officer Mecka requested a license plate check from his dispatcher via police radio, and was informed that Plaintiff was the registered owner of the vehicle. (Id. at ¶ 22). Ultimately, Officer Mecka was unable to effectuate the traffic stop and discontinued the pursuit upon being ordered to do so. (Id. at ¶ 23).

---

[1] Officer Mecka previously encountered Plaintiff several months prior to March 2009. (Defs.' Statement of Undisputed Material Facts ¶ 15, ECF No. 16-2). According to Officer Mecka, he came upon Plaintiff in a parked car in a parking lot one night when Plaintiff was teaching a female driver how to drive. (Id. at ¶¶ 15, 16). The businesses in the area were closed at the time and there was a large delivery truck parked at the location. (Id. at ¶ 17). Officer Mecka conducted a traffic stop, checked Plaintiff's credentials, conversed with Plaintiff, and left the scene. (Id. at ¶ 18). Plaintiff testified that Officer Mecka was professional and cordial during the interaction. (Id. at ¶ 19).

2

At the time of the pursuit, the minivan had not been reported stolen. (Br. Supp. Mot. Summ. J. 1, ECF No. 16-1). The mini-van was located shortly after the pursuit, and there were no indications that the vehicle had been damaged or stolen. (Id.).

      B.    <u>The Complaint-Warrant.</u>

Later in the night on March 6th, Officer Mecka went to the Jersey City police department's bureau of criminal identification ("BCI") and identified Plaintiff in a "booking photo." (Defs.' Statement of Undisputed Material Facts ¶ 7, ECF No. 16-2). In the early hours of March 7, 2009, Officer Mecka prepared an Investigation Report with respect to the incident (the March 7th Police Report"). In the March 7th Police Report, Officer Mecka stated: "Warrants for [Plaintiff] will be issued, the U/S Officer can identify the actor." (Cert. Stevie D. Chambers ("Chambers Cert."), Ex. H, ECF No. 18).

Officer Mecka signed a Complaint-Warrant against Plaintiff on March 7, 2009, for the charge of eluding in violation of N.J.S.A. 2C:29-2B. (Id. at Ex. G).

      C.    <u>Plaintiff's Alleged Location at the Time of the Incident and Theft of Plaintiff's Minivan.</u>

According to Plaintiff, he was visiting his children out-of-state on the date of the alleged eluding incident and that his minivan, which was seen by Officer Mecka, had been stolen.

Plaintiff alleged the timeline of events as follows. On March 5, 2009, Plaintiff travelled to Fayetville, North Carolina, which is where the mother of his children and his children then lived. (Pl.'s Dep. 32:21-34-15). On the afternoon of March 6, 2009 (i.e., the date of the eluding incident), Plaintiff took his children to Myrtle Beach, South Carolina. (Id. at 34:11-37:24). While in South Carolina, at approximately 3:00 p.m., Plaintiff received two traffic tickets, one for speeding and another for a seat belt violation. (Pl.'s Counterstatement of Undisputed Material Facts ¶ 1, ECF No. 20-1). Plaintiff returned to Fayetville, North Carolina during the

evening on March 6, 2009. (Pl.'s Dep. 37:23-24). On March 7, 2009, Plaintiff left North Carolina to return to New Jersey, and arrived home in the early morning hours of March 8, 2009.[2] (Id. at 64:11-15). Upon returning home, Plaintiff realized his minivan was missing. (Id at 64:16-22). Plaintiff went to the police station at approximately 10:00 a.m. on March 8, 2009 to report the vehicle as missing. (Defs.' Statement of Undisputed Material Facts ¶ 27, ECF No. 16-2). Plaintiff stated he had last seen the vehicle on March 4, 2009, before he went out of town. (Id.).

### D. Plaintiff's Arrest.

On March 19, 2009, Officer Mecka was called to report to BCI to identify Plaintiff after Plaintiff turned himself in with respect to the Complaint-Warrant charging him with eluding. (Defs.' Statement of Undisputed Material Facts ¶ 28, ECF No. 16-2). At that time, Plaintiff told Officer Mecka that he had been in South Carolina on the date of the incident, and further stated that he had received two traffic tickets while in South Carolina at 3:00 p.m., which is approximately seven and a half hours before the eluding incident. (Id. at ¶ 30). Plaintiff produced the two traffic tickets to another officer who was present who, in turn, showed the tickets to Officer Mecka. (Pl.'s Counterstatement of Material Facts ¶ 1, ECF No. 1). In response to this evidence, Officer Mecka stated that he could not account for Plaintiff's whereabouts earlier in the day on March 6th, but that he "[could] account for [Plaintiff's] whereabouts during the pursuit. He was in his car." (Dep. Officer Mecka 99:2-4).

Following Plaintiff's arrest on March 19, 2009, Officer Mecka contacted the police officer in South Carolina who issued the tickets to Plaintiff, Sergeant Baily. (Pl's

---

[2] During his deposition, Plaintiff presented a toll receipt indicating that he passed through a toll plaza in New Jersey at 12:24 a.m. on March 8, 2009. (Pl.'s Dep. 64:11-15).

Counterstatement of Undisputed Material Facts ¶ 4, ECF No. 20-1). Sergeant Baily confirmed that he had issued the tickets to Plaintiff on March 6, 2009. (Id.).

### E. The April 29th Supplemental Police Report.

On April 21, 2009, Officer Mecka prepared a supplementary investigation report (the "April 21st Supplemental Police Report"), which was intended to "clarify certain aspects of the [March 6, 2009] incident not contained in any previous reports." (Chambers Cert., Ex. I, ECF No. 18). The April 21st Supplemental Police Report contained two significant supplementations.

First, in the April 21st Supplemental Police Report, Officer Mecka specifically identified Plaintiff as the actor driving the vehicle on the night of the March 6th eluding pursuit, stating: "[Officer Mecka] had occasion to view [Plaintiff] operating the vehicle during the pursuit." (Id.). Previously, in the March 7th Police Report, Officer Mecka only indicated that he could "identify the actor." (Id. at Ex. H).

Second, Officer Mecka included information regarding Plaintiff's claim that he was out-of-state on March 6th, as well as additional information regarding his interaction with Plaintiff when Plaintiff turned himself in on the eluding charge. Officer Mecka stated that when he saw Plaintiff at BCI on March 19, 2009, he "again positively identified [Plaintiff] as the driver of the [] vehicle during the pursuit." (Chambers Cert., Ex. I, ECF No. 18). He further stated that Plaintiff was wearing a jacket similar to the one seen on the driver of the minivan during the incident. (Id.). In addition, with respect to Plaintiff's claimed whereabouts on March 6th, Officer Mecka stated: "[Plaintiff] claimed he was in South Carolina visiting family, and provided some receipts and 2- traffic citations written in his name on the date of the incident." (Id.).

F.  The Grand Jury Proceeding.

On May 26, 2009, Officer Mecka testified at a grand jury proceeding regarding the charge of eluding against Plaintiff. (Defs.' Statement of Undisputed Material Facts ¶ 35, ECF No. 16-2). Prior to the hearing, Officer Mecka met with Assistant Hudson County Prosecutor Karyn Darish ("A.P. Darish"). A.P. Darish prepared questions based upon information she obtained from reading the police reports regarding the matter, and intended to review those questions with Officer Mecka. (Id. 38).

Importantly, at the time of this meeting before the grand jury proceeding, A.P. Darish was allegedly unaware that Plaintiff had presented two traffic tickets he received in South Carolina on the date of the eluding incident because she did not have the April 21st Supplemental Police Report. (Id. at ¶ 38). She alleged that she told Officer Mecka that her supervisor had informed her that an additional police report existed, but that it was missing from the file. (Id. at ¶ 37). A.P. Darish testified that it was her understanding at the time, based upon her conversation with her supervisor, that the missing report only addressed the identification of Plaintiff. (Id. at 42). Thus, she was not aware of the two traffic tickets. (Id. at ¶ 41).

Officer Mecka did not provide A.P. Darish with a copy of the April 21st Supplemental Police Report, but testified that he informed A.P. Darish of Plaintiff's claim that he was in South Carolina at the time of the incident. (Id. at ¶ 39). Also, Officer Mecka testified that he informed A.P. Darish that Plaintiff had produced the two traffic tickets in the following colloquy:

> Officer Mecka.   I told [A.P. Darish] that [Plaintiff] had provided some traffic tickets and that he claimed he was in South Carolina visiting family on business.
>
> Q.   Did you tell her that the tickets had been issued in South Carolina around three o'clock for the same day?

6

|   |   |
|---|---|
| Officer Mecka. | I didn't remember the time, but I did tell her that he had tickets for the same day. |
| Q. | Did [A.P. Darish] seem at all interested or concerned about that fact or those facts? |
| Officer Mecka. | Nope. |

(Officer Mecka Dep. 106:7-18).

A.P. Darish, however, testified during her deposition that Officer Mecka did not inform her of the traffic tickets:

|   |   |
|---|---|
| Q. | Did [Officer Mecka] tell you anything about the fact that the subject of the grand jury proceedings, [Plaintiff], had said that he was out of state at the time Officer Mecka claimed he had driven his car or eluded him? |
| A.P. Darish. | Yes. |
| Q. | What did he tell you? |
| A.P. Darish. | From what I recall, he did mention that the [Plaintiff] said he was out of state, based on the questions I had prepared going off his one police report that said the [Plaintiff] was in South Carolina. That was the discussion we had, that [Plaintiff] had mentioned he was in South Carolina. |
| Q. | All right. Did Officer Mecka tell you that [Plaintiff] had presented any documentation such as tickets he received in South Carolina on the day he was supposedly eluding Officer Mecka? |
| A.P. Darish. | No. |
| Q. | Do you recall, was it contained in any of the police reports you have that [Plaintiff] had provided the Jersey City Police Department with tickets or copies of tickets he had received in South Carolina? |
| A.P. Darish. | At that time, that was the report I did not have. So I didn't know of the tickets. |

7

(A.P. Darish Dep. 13:18-14:20). A.P. Darish further testified that, had she known about the tickets, she "probably" would have adjourned the grand jury proceeding in order to investigate the time it took to travel from South Carolina to New Jersey.[3] (Id. at 15:8-19). A.P. Darish further stated that she would have presented the traffic tickets to the grand jury as exculpatory evidence. (Id.).

A.P. Darish went forward with the grand jury proceeding on May 26, 2009. During the proceeding, A.P. Darish asked Officer Mecka if Plaintiff claimed that he was on business at the time of the incident, and Officer Mecka responded in the affirmative. (Chambers Cert. Ex. F at 8:16-17, ECF No. 18). Officer Mecka also testified before the grand jury that Plaintiff had claimed that his vehicle had been stolen between March 4, 2009 and March 8, 2009. (Id. at 8:11-15). The grand jury indicted Plaintiff. (Defs.' Statement of Undisputed Material Facts ¶ 48, ECF No. 16-2).

A.P. Darish eventually received the traffic tickets nearly four months later in September 2009 from the public defender representing Plaintiff. (A.P. Darish Dep. 18:8-16). Thereafter, A.P. Darish discussed the matter with her supervisor, and determined to dismiss the case against Plaintiff. (Id. at 18:19-19:12).

---

[3] Multiple estimations and understandings of the time it would take to travel from Myrtle Beach, South Carolina to Jersey City, New Jersey, have been put forth by the parties and witnesses in this matter. During his deposition, Officer Mecka testified that he believed the trip took between six and eight hours, depending on who was driving. (Officer Mecka Dep. 97:25-98:12). A.P. Darish testified, however, that her internet research suggested that the trip took approximately eleven hours. (A.P. Darish. Dep. 26:17-27:6). In addition, Plaintiff testified that it normally takes him nine hours to travel from Jersey City to Fayetville, North Carolina. (Pl.'s Dep., 41:9-18).

G.   The Complaint.

Plaintiff filed a four count complaint in New Jersey Superior Court[4] asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). In the First and Second Count, Plaintiff alleged that Defendants issued the Complaint-Warrant and arrested Plaintiff without probable cause in violation of the Fourth and Fourteenth Amendments. In the Third Count, Plaintiff alleged Defendants presented the false charge of eluding to the Hudson County Grand Jury despite knowledge that the charge lacked probable cause. Finally, in the Fourth Count, Plaintiff claimed Jersey City violated his constitutional rights pursuant to a custom, policy or practice (the "Monell Claim").

Specifically, Plaintiff argued Defendant Mecka's conduct violated Plaintiff's rights at three possible points in the arrest and subsequent proceedings before the grand jury. First, Plaintiff argued that Officer Mecka lacked probable cause to sign out a Complaint-Warrant against Plaintiff charging him with the act of eluding. (Opp. Br. 14, ECF No. 20). Alternatively, Plaintiff argued that it was not "objectively reasonable" for Officer Mecka to believe that probable cause existed at the time of Plaintiff's arrest because Plaintiff had provided evidence in the form of two traffic tickets to demonstrate he was out of state at the time of the alleged eluding incident. (Id.). Finally, Plaintiff argued Officer Mecka failed to inform A.P. Darish of the two traffic tickets prior to the grand jury proceeding, which constituted a violation of his constitutional rights.

Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (the "Motion"). Defendants argued that probable cause existed for the issuance of a complaint-warrant and for the arrest of Plaintiff – which Defendants argued is a complete defense against

---

[4] Defendants removed this action to federal court on October 18, 2011, alleging jurisdiction under 28 U.S.C. § 1331(a). (Notice of Removal ¶ 1, ECF No. 1).

all Plaintiff's claims. In addition, Defendants argued that Officer Mecka is entitled to qualified immunity.[5]

## II. STANDARD OF REVIEW.

### A. Summary Judgment.

To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that [they are] entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986), see also Green v. City of Paterson, 971 F. Supp. 891 (1997).

A district court may not resolve factual disputes in a motion for summary judgment. Linan–Faye Constr. Co. v. Housing Auth., 49 F.3d 915, 926–27 (3d Cir.1995) ("at the summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' ") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); Desti, Inc. v. Continental Ins. Co., 968 F.2d 307, 308 (3d Cir.1992) ("threshold inquiry is whether there

---

[5] Defendants also asserted they are entitled to summary judgment with respect the Fourth Count of the Complaint against Jersey City because no pattern, custom or practice was alleged. The Court agrees. Under § 1983, municipalities "cannot be held liable under a theory of respondeat superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy." Luthe v. City of Cape May, 49 F. Supp. 2d 380, 398 (D.N.J. 1999) (quoting Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman, 507 U.S. at 166, 113 S.Ct. 1160. Municipal "policies" or "customs" for § 1983 purposes are such "practices of [government] officials as are so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Sostarecz v. Misko, 1999 WL 239401, at *9 (E.D.Pa. Mar.26, 1999) (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018) (internal alterations omitted).
   In the Complaint, Plaintiff makes only conclusory and unsupported allegations that Jersey City "acted under color of law pursuant to its official policy or custom and practice" to violate Plaintiff's civil rights. (Compl ¶ 4). Plaintiff makes no other allegations against Jersey City in the Complaint, and the summary judgment record is devoid of even a scintilla of evidence tending to demonstrate the existence of a custom or policy "with the force of law" causing Plaintiff's alleged constitutional injury. See Luthe v. City of Cape May, 49 F. Supp. 2d at 398. Therefore, the Court grants Defendants' motion for summary judgment the Fourth Count of the Complaint.

are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party' ") (citations omitted). The existence of some factual dispute between the parties, however, will not defeat a properly supported motion for summary judgment. Rather, the factual dispute must involve material facts, facts which might affect the outcome of the suit. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir.1995); see also Hampton v. Borough of Tinton Falls Police Dept., 98 F.3d 107, 112 (3d Cir.1996) (party opposing summary judgment must present sufficient evidence for a reasonable jury to find in its favor by demonstrating a dispute over facts that might affect the outcome of the suit) (citations omitted). When the resolution of issues depends wholly upon the interpretation of the applicable law, summary judgment is appropriate. See Green v. City of Paterson, 971 F. Supp. 891, 899-900 (D.N.J. 1997) (citations omitted).

    B.    Section 1983.

To prevail in a Section 1983 action, a plaintiff must establish (1) that the conduct constituted state action or action committed while acting under color of law and (2) that the conduct deprived an individual of rights, privileges, or immunities secured by the constitution or laws of the United States. Kneipp v. Tedder, 95 F.3d 1199 n. 1(3d Cir. 1996); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1264 (3d Cir. 1994); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir. 1990); see also Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (citing same two elements "essential elements to a § 1983 action"), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155, 98 S. Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); Jackson v. Temple Univ. of Commonwealth Sys. of Higher Educ., 721 F.2d 931, 933 (3d Cir.1983); McArdle v. Tronetti, 769 F. Supp. 188, 190 (W.D.Pa.1991), aff'd,

961 F.2d 1083 (1992). Section 1983 does not create substantive rights. Rather, Section 1983 provides an avenue of recovery for the deprivation of established constitutional or statutory rights. Kneipp, 95 F.3d at 1204; Groman, 47 F.3d at 633.

### III. LEGAL ANALYSIS.

#### A. Probable Cause and Plaintiff's First and Second Counts: Issuance of the Complaint-Warrant and Plaintiff's Arrest.

In the First and Second Count of the Complaint, Plaintiff alleged that Defendants issued the Complaint-Warrant and arrested Plaintiff without probable cause in violation of his constitutional rights under the Fourth and Fourteenth Amendments. Therefore, this Court must determine whether probable cause existed at these points in time.

The Fourth Amendment prohibits a police officer from arresting and incarcerating a citizen except upon probable cause. See U.S. Const., amend. IV; see also Luthe v. City of Cape May, 49 F. Supp. 2d 380 (D.N.J. 1999) (citing Friedland v. Fauver, 6 F. Supp. 2d 292, 306 (D.N.J. 1998). Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Green v. City of Paterson, 971 F. Supp. 891, 900 (D.N.J. 1997) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480 (3d Cir. 1995)).

The validity of an arrest does not depend on the ultimate finding of guilt or innocence following an arrest. See id. (citing Pierson v. Ray, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). It is not the obligation of the police officer to "conduct a mini-trial" prior to an arrest. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.), cert. denied, 519 U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996); Barna v. City of Perth Amboy, 42 F.3d

12

809, 819 (3d Cir.1994) ("Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law.") (citing Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959)). Probable cause falls somewhere between the poles of mere suspicion and evidence sufficient to prove guilt beyond a reasonable doubt. Orsatti, 71 F.3d at 482–83.

In determining whether probable cause exists in the context of a motion for summary judgment, the Third Circuit has held:

> In a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury, but where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate. The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest.

Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (citing Deary v. Three Un–Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984)).

A police officer who arrests an individual without probable cause may be liable for damages in a civil rights suit. Green v. City of Paterson, 971 F. Supp. at 900. However, the doctrine of qualified immunity protects police officers, like other governmental officials, from liability for civil damages where their conduct in performing a discretionary function "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (citing Orsatti, 71 F.3d at 483 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982))); see also Sharrar, 128 F.3d at 826). "[I]n § 1983 cases involving alleged violations of the Fourth Amendment, ... the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar, 128 F.3d at 827 (citing

13

Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). Police officers "who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." Sharrar, 128 F.3d at 826 (quoting Hunter, 502 U.S. at 227, 112 S.Ct. 534) (additional citations omitted). "In this way, the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Sharrar, 128 F.3d at 826 (quoting Hunter, 502 U.S. at 229, 112 S.Ct. 534 (quoting Malley, 475 U.S. at 341, 343, 106 S.Ct. 1092)).

In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide. Sharrar, 128 F.3d at 828; see also Luthe v. City of Cape May, 49 F. Supp. 2d at 389 (D.N.J. 1999). "Only if the historical facts material to the latter issue are in dispute, ... will there be an issue for the jury." Luthe v. City of Cape May, 49 F. Supp. 2d at 389 (quoting Sharrar, 128 F.3d at 828).

"[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." Orsatti, 71 F.3d at 483 (citing *Malley,* 475 U.S. at 345, 106 S.Ct. 1092) "Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, the [D]istrict [C]ourt should resolve any immunity question at the earliest possible stage of the litigation." Orsatti, 71 F.3d at 483 (citations omitted); see also Luthe v. City of Cape May, 49 F. Supp. 2d at 390.

Here, Plaintiff alleged that Defendants violated his rights when signing out the Complaint-Warrant because Officer Mecka lacked probable cause to believe Plaintiff had

14

committed the crime of eluding. Based upon the undisputed material facts presented by the parties, the Court finds that Officer Mecka had probable cause to issue the Complaint-Warrant.

The evidence submitted indicates that Officer Mecka: viewed the driver of the speeding minivan that ultimately eluded him through the vehicle's open window (Defs.'s Statement of Undisputed Material Facts ¶ 11, ECF No. 16-2); recognized the driver of the vehicle and his distinct dreadlocks (Id. at ¶¶ 12, 13); believed the driver to be Plaintiff, whom he had interacted with on a previous occasion (Id. at ¶ 14); ascertained via his dispatcher that Plaintiff was the registered owner of the vehicle (Id. at ¶ 22); and went to BCI and identified Plaintiff in a "booking photo." (Id. at ¶ 7). Moreover, at the time of the pursuit and the issuance of the Complaint-Warrant, the minivan had not been reported stolen (Br. Supp. Mot. Summ. J. 1, ECF No. 16-1), and there were no indications that the vehicle had been damaged or stolen. (Id.). Officer Mecka's belief that probable cause existed at the time of swearing out the Complaint-Warrant was not unreasonable and, therefore, Defendants are entitled to summary judgment with respect to the First Count of the Complaint.

With respect to Plaintiff's claim that Officer Mecka's belief that probable cause existed at the time of Plaintiff's arrest was unreasonable, the Court disagrees. Upon arriving at BCI to identify Plaintiff, Officer Mecka positively identified Plaintiff as the individual driving the minivan during the eluding incident, and observed that Plaintiff was wearing a jacket similar to the one seen on the driver of the minivan during the incident. (Chambers Cert., Ex. I, ECF No. 18). Although Plaintiff told Officer Mecka that he had been in South Carolina on the date of the incident, and produced the two traffic tickets he had received at 3:00 p.m. in South Carolina, Officer Mecka testified during his deposition that he believed the trip from Myrtle Beach, South Carolina to Jersey City, New Jersey was "between six and eight hours, depending on how fast

you drive." (Officer Mecka Dep. 98:7-12). The length of this trip remains a contested issue to this day, with the parties estimating that it could range from six, to seven and a half, to eleven hours. Moreover, it was not until after the arrest that Officer Mecka spoke to the police officer in South Carolina who had issued the tickets to Plaintiff. (Pl.'s Counterstatement of Undisputed Material Facts ¶ 4, ECF No. 20-1). In light of these undisputed facts, Officer Mecka's belief that probable cause existed at the time of Plaintiff's arrest was not unreasonable. Thus, Defendants are entitled to qualified immunity and summary judgment is granted in their favor with respect to the First and Second Counts of the Complaint.

### B. The Grand Jury Proceeding.

In the Third Count of the Complaint, Plaintiff argued that "[a]s a result of the false charge filed against plaintiff by defendant [], the matter was presented to the Hudson County Grand Jury," and an indictment issued. (Compl. Third Count ¶ 2, ECF No 1-1). In Plaintiff's opposition papers, he argued that his constitutional rights were violated when Officer Mecka failed to inform A.P. Darish of the two traffic tickets prior to the grand jury proceeding. (Opp. Br. 17, ECF No. 20). Plaintiff argued that he had a "clearly established right to not suffer continued incarceration and malicious prosecution because of representations and/or omissions Officer Mecka made in reckless disregard for the truth." Id. The Court agrees.

Qualified immunity shields state officials from suit when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Yarris v. County of Delaware, 465 F.3d 129 (2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1981)). Courts must undertake a two-step inquiry to determine whether a state official is entitled to qualified immunity. First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. Id.

(citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established" at the time the violation occurred. Id. If the court concludes that the defendant's conduct violated a clearly established constitutional or statutory right, it must deny the defendant the protection afforded by qualified immunity. Id.; see also Williams v. Bitner, 455 F.3d 186, 190–91 (3d Cir.2006).

As to the first step, the Third Circuit has held that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor." Gibson v. Superintendent of N.J. Dep't of Law and Public Safety, 411 F.3d 427, 443 (3d Cir. 2005); see also Yarris, 465 F.3d at 141. In Gibson, police officers failed to inform a prosecutor of exculpatory evidence. Id. The Third Circuit recognized that under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 E.Ed.2d 215 (1963), a prosecutor's failure to disclose exculpatory evidence violates due process when the evidence is material to either guilt or punishment. The Gibson Court stated: "Although Brady places the ultimate duty of disclosure on the prosecutor, it would be anomalous to say that police officers are not liable when they affirmatively conceal material evidence from the prosecutor." Gibson, 411 F.3d 443. Thus, the Third Circuit joined numerous other circuits in recognizing that a plaintiff states "an actionable § 1983 claim" against police officers for interference with his Fourteenth Amendment rights by alleging that the police officers failed to disclose material exculpatory information to the prosecutor. Id.[6] Thus, the Court finds that Plaintiff's argument that Officer Mecka failed to disclose exculpatory evidence in the form of the two traffic tickets he received in South Carolina on the date of the alleged

---

[6] The emphasis on intentional concealment, rather than negligent omission, is consistent with the determination by the Supreme Court that "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." Domenech v. City of Philadelphia, No. 06-1325, 2009 WL 1109316, *1, *7 (E.D. Pa. April 23, 2009) (citing Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

17

eluding incident to A.P. Darish in advance of the grand jury proceeding alleged a constitutional violation.

Turning to the second step of the inquiry, the Court finds that the constitutional right allegedly violated by the Defendants was "clearly established" at the time the violation occurred. See Gibson, 411 F.3d 427 (2005); see also Yarris v. County of Delaware, 465 F.3d 129 (2006); Domenech v. City of Philadelphia, 2009 WL 1109316 *7.[7]

However, the inquiry does not end here. There is a factual issue that prevents this Court from determining whether Officer Mecka's conduct was objectively reasonable and, therefore, whether qualified immunity is appropriate. See Curley v. Klem, 499 F.3d 199, 208-11 & n. 12 (3d Cir. 2007) (Curley II).[8] Specifically, there is a factual issue as to whether Officer Mecka failed inform A.P. Darish to the existence of the traffic tickets prior to the grand jury proceeding.

The parties do not dispute that Officer Mecka included the existence of the two traffic tickets in the April 21st Supplemental Police Report. (Chambers Cert., Ex. I, ECF No. 18). Nor

---

[7] The Court notes that in Gibson, the Third Circuit determined that the police officers in that case were entitled to qualified immunity because their obligation to turn over exculpatory evidence was not clearly established constitutional law at the time of the plaintiff's prosecution in 1994. 411 F.3d at 444. However, the Third Circuit in Gibson explicitly recognized the right. Moreover, the Gibson court recognized that as of 2000, the Third Circuit assumed that police officers have an "affirmative duty to disclose exculpatory evidence to an accused if only informing the prosecutor that the evidence exists" and that a "§ 1983 claim alleging a due process violation under Brady can, therefore, be asserted against police officers." Smith v. Holtz, 210 F.3d 186, 197 (3d Cir. 2000); see also Domenech v. City of Philadelphia, 2009 WL 1109316 at *7 (interpreting Gibson to hold that the obligation of police officers to turn over exculpatory evidence was established constitutional law as of 1995, at the earliest).

[8] Because the doctrine of qualified immunity provides not only a defense to liability, but "immunity from suit," a court should ordinarily determine this question "long before trial." Miller v. Diguglielmo, CIV.A. 07-2686, 2010 WL 4909589 (E.D. Pa. Nov. 30, 2010) (quoting Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). As the Third Circuit expressed in Curley II, "[t]hat is well and good when there are no factual issues in a case, but often the facts are intensely disputed, and our precedent makes clear that such disputes must be resolved by a jury after a trial." 499 F.3d at 207. While the question of whether an officer made a reasonable mistake of law is a "question of law properly answered by the court," a jury must "determine[ ] the disputed historical facts material to the qualified immunity question." Bowman v. Reilly, No. 09–1322, 2010 WL 831412, at *8–9 (E.D.Pa. March 4, 2010) (Slomsky, J.) (finding issues of fact for the jury, including the placement of plaintiff's hands, integral to determining whether "defendant may be found to have been on notice that his conduct violated Plaintiff's rights") (quoting Curley II, 499 F.3d at 210–11) (holding that a jury must resolve disputed historical facts regarding information available to defendant state trooper prior to court's determination of the reasonableness of trooper's force against plaintiff). A "decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Id. (citing Curley v. Klem, 298 F.3d 271, 278 (3d Cir.2002) (Curley I )); Giles v. Kearney, 571 F.3d 318, 326 (3d Cir.2009)).

do the parties dispute that prior to the grand jury proceeding, Officer Mecka discussed Plaintiff's claim that he was in South Carolina on the date of the eluding incident with A.P. Darish. (Defs.' Statement of Undisputed Material Facts ¶ 35, ECF No. 16-2). The parties further agree that A.P. Darish did not have a copy of the April 21st Supplemental Police Report prior to the grand jury proceeding, and that Officer Mecka did not provide her with a copy. (Id. at ¶ 39).

However, there is a dispute as to whether Officer Mecka informed A.P. Darish that Plaintiff had produced the two traffic tickets. Officer Mecka testified that he did (Officer Mecka Dep. 106:7-18); A.P. Darish testified that he did not. (A.P. Darish Dep. 13:18-14:20). This fact is clearly material to the determination of whether Officer Mecka's conduct was objectively reasonable, and indeed to whether there was a constitutional violation at all. This is particularly true given A.P. Darish's testimony that, had she known about the tickets, she "probably" would have adjourned the grand jury proceeding in order to investigate the time it took to travel from South Carolina to New Jersey (Id. at 15:8-19), and would have presented the traffic tickets to the grand jury as exculpatory evidence. (Id.).

Because the factual question of whether Officer Mecka informed A.P. Darish of the traffic tickets prior to the grand jury proceeding pertains to whether there was any constitutional violation at all, the question must be resolved by a trier of fact and not this Court as a question of law.

Therefore, the Court shall deny Defendants' motion for summary judgment with respect to the Third Count of the Complaint.

### IV. <u>CONCLUSION.</u>

Defendant's motion for summary judgment with respect to the First, Second and Fourth Counts of the Complaint is **granted.** Defendants' motion for summary judgment with respect to the Third Count of the Complaint is **denied.**

SO ORDERED

_____  4/30/13
JOSEPH A. DICKSON, U.S.M.J.